**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AHMAD ABU HUSEIN, <br><br> Plaintiff, <br><br> v. <br><br> EAGLE EXPRESS LINES, INC. <br><br> Defendant. | Case Number 1:20-cv-07267 <br><br> Judge John F. Kness <br><br> Magistrate Judge Beth W. Jantz |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AGAINST PLAINTIFF AHMAD ABU HUSEIN**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF MATERIAL UNDISPUTED FACTS ...............................................1

    A. Plaintiff's Employment with Eagle......................................................................1

    B. Eagle's Discrimination and Retaliation Prevention and Training .......................2

    C. Eagle's Bidding Process for Regular Routes ......................................................2

    D. Plaintiff's Regular Route ....................................................................................3

    E. Eagle's Daily Extra Trips for the USPS .............................................................3

    F. Eagle's Busy Christmas Season..........................................................................4

    G. Eagle's Truck Assignment System .....................................................................4

    H. Eagle's Truck Cleaning Policy ...........................................................................5

III. ARGUMENT AND AUTHORITIES.........................................................................5

    A. Plaintiff Cannot Establish a Prima Facie Case of Either Discrimination or Retaliation..............................................................................5

        1. Plaintiff's Discrimination and Retaliation Claims Both Fail as a Matter of Law Because Eagle Did Not Take Any Adverse Action Against Him..................................................................6

        2. Plaintiff's Retaliation Claim Fails Because Plaintiff Cannot Establish That His EEOC Charge was the But-For Cause of the Alleged Reduction in Hours...............................................8

        3. Plaintiff Cannot Establish a Prima Facie Title VII Claim Of Discrimination Because He Cannot Show that He was Treated Less-Favorably than Similarly Situated Employees.......................................................................................10

    B. Even Assuming Plaintiff Could Set Forth Prima Facie Cases for Any of His Claims, Eagle Nevertheless Had a Legitimate, Non-Discriminatory Reason for the Alleged Adverse Actions..................................12

    C. Plaintiff Cannot Demonstrate Pretext ...............................................................13

    D. Summary Judgment for Eagle is Appropriate on the Issue of Punitive Damages Because Eagle Did Not Act with Malice or Reckless Indifference..........................................................................................14

IV. CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adreani v. First Colonial Bankshares Corp.*,
154 F.3d 389 (7th Cir. 1998) .................................................................................................. 14

*Boss v. Castro*,
816 F.3d 910 (7th Cir. 2016) .................................................................................................... 5

*Clark County School Dist. v. Breeden*,
532 U.S. 268 (2001) ............................................................................................................... 10

*Cung Hnin v. TOA (USA), LLC*,
751 F.3d 499 (7th Cir. 2014) .................................................................................................... 8

*Davidson v. Midelfort Clinic*,
133 F.3d 499 (7th Cir. 1998) .................................................................................................... 9

*De v. City of Chicago*,
912 F. Supp. 2d 709 (N.D. Ill. 2012) ..................................................................................... 14

*Duncan v. Thorek Memorial Hosp.*,
784 F.Supp.2d 910 (N.D. Ill. 2011) ..................................................................................... 7, 8

*E.E.O.C. v. Target Corp.*,
460 F.3d 946 (7th Cir. 2006) .................................................................................................. 12

*Grube v. Lau Indus., Inc.*,
257 F.3d 723 (7th Cir. 2001) .................................................................................................... 6

*Johnson v. University of Wisconsin-Eau Claire*,
70 F.3d 469 (7th Cir. 1995) ...................................................................................................... 8

*Kidwell v. Eisenhauer*,
679 F.3d 957 (7th Cir. 2012) .................................................................................................... 9

*Kolstad v. Am. Dental Ass'n*,
527 U.S. 526 (1999) ............................................................................................................... 15

*Markel v. Bd. of Regents of the Univ. of Wisconsin Sys.*,
276 F.3d 906 (7th Cir. 2002) ................................................................................................ 6, 9

*McClendon v. Indiana Sugars, Inc.*,
108 F.3d 789 (7th Cir. 1997) .................................................................................................... 8

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792(1973) ................................................................................................ 1, 5

*Mendez Matos v. Municipality of Guaynabo*,
  557 F.3d 36 (1st Cir. 2009) ........................................................................................ 15

*Mollet v. City of Greenfield*,
  926 F.3d 894 (7th Cir. June 13, 2019) ..................................................................... 5, 6

*Oliver v. Joint Logistics Managers, Inc.*,
  893 F.3d 408 (7th Cir. 2018) ...................................................................................... 11

*Ortiz v. John O. Butler Co.*,
  94 F.3d 1121 (7th Cir. 1996) ...................................................................................... 14

*Russell v. Acme-Evans Co.*,
  51 F.3d 64 (7th Cir. 1995) ......................................................................................... 14

*Smart v. Ball State Univ.*,
  89 F.3d 437 (7th Cir. 1996) ......................................................................................... 6

*State Farm Mut. Auto Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ................................................................................................... 15

*Stutler v. Illinois Dept. of Corr.*,
  263 F.3d 698 (7th Cir. 2001) ....................................................................................... 6

*Vakharia v. Swedish Covenant Hosp.*,
  190 F.3d 799 (7th Cir. 1999) ..................................................................................... 14

*Zaderaka v. Ill. Human Rights Comm'n*,
  131 Ill.2d 172 (1989) ................................................................................................. 14

**Statutes**

42 U.S.C. § 1981a(b)(1) .................................................................................................. 15

42 U.S.C. § 2000e ........................................................................................................... 14

I. INTRODUCTION

Plaintiff's Complaint contains four total claims against Eagle, including two claims alleging that Eagle violated Title VII and 775 ILCS 5/2-101, *et. seq.* by discriminating against Plaintiff by reducing his wages, work hours and routes and assigning him lower quality trucks and equipment, (*see* Plaintiff's Complaint [ECF No. 1]) at Counts I and III, and two claims alleging that Eagle retaliated against Plaintiff in violation of Title VII and 775 ILCS 5/2-101, *et. seq.* by reducing Plaintiff's hours and wages. *Id.* at Counts II and IV. Because Plaintiff has no direct evidence of any of his claims, the *McDonnell Douglas* burden-shifting analysis should be used. Under this framework, Plaintiff must first set forth a prima facie case establishing the elements of his claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792(1973). Here, all of Plaintiff's claims fail as a matter of law because he cannot carry his prima facie burden, and even if he could, Eagle has legitimate, non-pretextual reasons for the alleged adverse actions taken against him.

II. STATEMENT OF MATERIAL UNDISPUTED FACTS

A. Plaintiff's Employment with Eagle

Plaintiff, an Arab-American male, began his employment with Eagle, an interstate motor carrier, on December 5, 2016. Defendant's Statement of Undisputed Material Facts ("*SMF*") at ¶1. Because Plaintiff was working for another motor carrier at the time, Eagle employed Plaintiff as a part-time driver. *SMF* at ¶2. However, on May 14, 2018, Plaintiff switched to full-time employment with Eagle. *SMF* at ¶3. As a full-time driver for Eagle, Plaintiff performed work for Eagle out of the Bedford Park United States Postal Facility ("Bedford Park"). *SMF* at ¶4. During this time, Eagle paid Plaintiff $22.48 per hour worked. *SMF* at ¶5. In July 2019, Plaintiff accepted an employment position with the United States Post Office ("USPS") requiring him to work 48 hours per week out of the Bedford Park facility. *SMF* at ¶6. Because of his full-time position with the USPS, Plaintiff returned to part-time employment with Eagle. *SMF* at ¶7.

Additionally, because the USPS is Eagle's main customer, Plaintiff could no longer perform work for Eagle out of the Bedford Park facility, so Eagle changed Plaintiff's work reporting location to Forest Park. *SMF* at ¶8. Both before and after Plaintiff switched to part-time

1

employment in 2019, Eagle paid Plaintiff $24.50 per hour worked. *SMF* at ¶9. On October 4, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on October 4, 2019 (Notice of Charge of Discrimination), which was perfected on November 18, 2019 (the "Perfected Charge Notice"). *SMF* at ¶10-11. Plaintiff amended the Charge (Amended Charge) on February 17, 2020. *SMF* at ¶12.

> **B.     Eagle's Discrimination and Retaliation Prevention and Training**

Eagle provides discrimination and retaliation training to its employees, including driver managers and supervisors. *SMF* at ¶13. Eagle's training on discrimination and retaliation includes one-on-one training with Eagle's Human Resources Department, online training, and general email training. *SMF* at ¶14. Eagle distributes orientation materials to all employees, which make clear that Eagle does not tolerate discrimination or retaliation in the workplace, including race-based discrimination and harassment. (the "Discrimination and Retaliation Materials"). *SMF* at ¶15. The Discrimination and Retaliation Materials further spell out Eagle's reasonable complaint procedure as follows: "An employee who believes he or she has been subject to harassment prohibited by this policy should report the incident immediately to your supervisor, HR Director or Safety Director." *SMF* at ¶16.

> **C.     Eagle's Bidding Process for Regular Routes**

Eagle is an interstate motor carrier that hauls mail for the USPS, which is Eagle's main customer. *SMF* at ¶18. To perform the required mail hauling services for the USPS, Eagle creates routes that are awarded to drivers through Eagle's bidding process. *SMF* at ¶19. Thus, rather than simply assign routes and hours to drivers, Eagle instead allows its drivers to choose their own hours and routes through the bidding process, which is based on seniority. *SMF* at ¶20. When it comes time to bid, each driver chooses his or her route by bidding on the same, and if the route has not already been claimed by a more senior, full-time driver, then the route is awarded to the then bidding driver. *SMF* at ¶21. Eagle determines seniority based on hiring date, but regardless of hiring date, full-time drivers have seniority over part-time drivers. *SMF* at ¶22.

### D. Plaintiff's Regular Route

Plaintiff understood that Eagle's bidding process was determined based on seniority. *SMF* at ¶23. It was through Eagle's bidding process that Plaintiff bid on and obtained the regular route of his choosing. *SMF* at ¶24. For Eagle's Bedford Park drivers, 35 hours per week is consistent with full-time employment. *SMF* at ¶25.

### E. Eagle's Daily Extra Trips for the USPS

In addition to their regular routes, Eagle's Bedford Park drivers additionally have the option to pick up extra trips in the mornings when available. *SMF* at ¶27. These extra trips are created by the USPS on a daily basis. *SMF* at ¶28. However, due to the nature of the industry and daily changes in the volume of mail, the availability of extra trips varies daily. *SMF* at ¶29. Extra trips run in the morning, so they are only available to drivers whose regular routes run in the afternoon or otherwise do not overlap with the morning extra trip schedule. *SMF* at ¶31. When the extra trips are needed, the extra trips are for work based out of the USPS's Romeoville facility and are thus considered Romeoville work. *SMF* at ¶32.

When extra trips are available and not enough Romeoville drivers want them, the extra trips then become available to Eagle's Bedford Park drivers. *SMF* at ¶34. Because the extra trips, if available, run in the mornings, Bedford Park drivers knew to call Eagle's Romeoville facility each morning after they finished their usual Bedford Park routes to ask whether any extra trips were available. *SMF* at ¶35. However, if drivers did not want to perform any extra trips, they did not have to call in and could refuse them at their option *SMF* at ¶36. Plaintiff regularly called in for extra trips and was given them when available. *SMF* at ¶37. However, Plaintiff also exercised his option to refuse extra trips. *SMF* at ¶38. When extra routes are available and multiple Bedford Park drivers want an extra trip, the only factors determining which driver gets the extra trip are (1) whether the driver wants the work; (2) the drivers' availability, determined by whether their regular routes overlap with the extra trip; and (3) the drivers' seniority, with the extra trip being given to the most senior driver. *SMF* at ¶39.

On the other hand, when no extra trips are available on any given morning, the Bedford Park drivers then only perform their regular routes chosen through the bid process. *SMF* at ¶40. Plaintiff conceded that during the period in which he contends his hours were reduced while he worked full-time, it was because he no longer had a morning assignment. *SMF* at ¶41.

### F. Eagle's Busy Christmas Season

As a motor carrier hauling mail for the USPS, the Christmas season is Eagle's busiest time of year. *SMF* at ¶43. During late November and December leading up to the Christmas holiday, USPS will create and require Eagle to run routes that only run during this time period. *SMF* at ¶44. Thus, once the Christmas busy season runs its course, the additional routes are no longer necessary and are cancelled after New Year's. *SMF* at ¶45. After switching to part-time employment in July 2019, Plaintiff worked minimal hours for Eagle. *SMF* at ¶47. However, once the 2019 Christmas season began, Plaintiff experienced a significant increase in hours for the months of November and December 2019. *SMF* at ¶48. Thereafter, after the 2019 Christmas season ended, Plaintiff returned back to his normal level of part-time hours prior to the busy season. *SMF* at ¶49.

### G. Eagle's Truck Assignment System

As a business strategy, Eagle assigns trucks to routes based on mileage. *SMF* at ¶50. Specifically, Eagle uses higher-mileage trucks on higher-mileage routes and lower-mileage trucks on lower-mileage routes. *SMF* at ¶51. Thus, because trucks are assigned to routes and drivers choose their routes through the bidding process, which is based on seniority, drivers with seniority are able to choose lower mileage vehicles by choosing lower mileage routes through the bidding process. *SMF* at ¶52. However, this assignment system is only effective for morning routes. *SMF* at ¶53. For afternoon routes, drivers typically must resort to taking trucks based on availability. *SMF* at ¶54. In fact, even if an afternoon driver did have a truck assigned to their route, that assignment was pending availability of the specific truck and whether the truck had returned from the morning route. *SMF* at ¶55. Inevitably, because of daily variations in traffic patterns, fueling needs, and other delays, whether a truck is back and available in time for a driver's afternoon route

4

varies from day to day. *Id.*, *see also SMF* at ¶56. Thus, drivers lose out on the trucks they want on a daily basis. *SMF* at ¶57.

### H. Eagle's Truck Cleaning Policy

Eagle requires all Eagle drivers to clean its trucks. *SMF* at ¶58. Specifically, each and every Eagle driver is required and expected to clean his or her truck after each and every time he or she finishes using the same for a route. *SMF* at ¶59. Unfortunately, despite this expectation, it is a common occurrence for drivers to leave trucks dirty for the next driver *SMF* at ¶60. Thus, all Eagle drivers complain about the quality and cleanliness of Eagle's trucks and equipment. *SMF* at ¶61. When a prior driver leaves a truck dirty, the next Eagle driver using the truck is expected to report the incident and then clean the truck for their use. *SMF* at ¶62.

## III. ARGUMENT AND AUTHORITIES

### A. Plaintiff Cannot Establish a Prima Facie Case of Either Discrimination or Retaliation

Plaintiff's Complaint alleges that Eagle violated Title VII by discriminating against him by reducing his wages, work hours and routes and assigning him lower quality trucks and equipment. *See* Plaintiff's Complaint [ECF No. 1] at Count I. Plaintiff additionally claims that Eagle retaliated against him for filing an EEOC charge on November 18, 2019. *Id.* at Count II.

To establish a prima facie case of discrimination under Title VII, Plaintiff must introduce evidence that he is (1) a member of a protected class; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and (4) was treated less favorably that a similarly-situated employee outside of his protected class. *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016); *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973)). Similarly, to establish a prima facie case of retaliation under Title VII, Plaintiff must show: (1) he was engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) there is a causal link between the protected activity and the adverse action. *Boss v. Castro*, 816 F. 3d 910, 918 (7th Cir. 2016); *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. June 13, 2019) (internal citation omitted). Here, Plaintiff's discrimination claim fails as a matter of law because (1) Eagle did not take any adverse action against him and (2) Plaintiff was not treated less favorably than any similarly-

5

situated employee outside of his protected class. Plaintiff's retaliation claim also fails because (1) Eagle did not take any adverse action against him and (2) there is no causal link between Plaintiff's race and any alleged protected activity.

### 1. Plaintiff's Discrimination and Retaliation Claims Both Fail as a Matter of Law Because Eagle Did Not Take Any Adverse Action Against Him.

Here, Plaintiff first alleges that Eagle took an adverse action against him by assigning him lower quality trucks and equipment. *See Id.* at Count I. However, even if true, these allegations do not amount to actionable adverse employment actions. *Markel v. Bd. of Regents of the Univ. of Wisconsin Sys.*, 276 F.3d 906, 911 (7th Cir. 2002). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996); *see also Stutler v. Illinois Dept. of Corr.*, 263 F.3d 698, 702-03 (7th Cir. 2001) (holding that "a lateral transfer without a loss in benefits does not constitute an adverse employment action"). Thus, in *Markel*, the Seventh Circuit held that being "denied 'better' equipment, the ability to travel and make presentations, and removed from certain accounts that caused [the plaintiff] not to receive bonuses" did not constitute adverse employment actions because they are not readily quantifiable losses that Title VII was meant to redress. 276 F.3d at 911. Thus, to the extent Plaintiff relies on his allegations that Eagle assigned him lower quality trucks and equipment to state his claims of discrimination and retaliation under Title VII, those claims necessarily fail because the allegations do not amount to actionable adverse employment actions.

In addition to his equipment allegations, Plaintiff alleges that Eagle took an adverse action against him by reducing his wages, work hours and routes. *See Id.* at Counts I and II. However, an employer's "decision to change [an employee's] working hours certainly does not rise to the level of an adverse employment action." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001). In *Duncan v. Thorek Memorial Hosp.*, the Court held that the plaintiff could not claim that a new work schedule requiring her to work twelve-hour shifts instead of eight-hour shifts constitutes an

6

adverse action where the new work schedule was unaccompanied by a reduction in pay rate or significant change in job duties. 784 F.Supp.2d 910, 920 (N.D. Ill. 2011).

Here, Plaintiff similarly did not experience any reduction in pay rate or change in job duties. In fact, Plaintiff does not allege that his job duties changed, and his payroll records demonstrate that his rate of pay only increased over the course of his employment with Eagle, despite the variations in his employment status. *SMF* at ¶9.

Moreover, Plaintiff's allegations that his hours were reduced and his routes were changed, are untrue and undermined by his payroll records. At all times while Plaintiff was employed as a full-time driver with Eagle, Plaintiff performed the route that he chose to work on through Eagle's bid process, which is based on seniority. *SMF* at ¶20. Thus, throughout his full-time employment, Plaintiff performed at least 35 hours per week on this one route, which is consistent with full-time employment out of Eagle's Bedford Park facility. *SMF* at ¶25.

In addition to their regular routes chosen through the bidding process, Plaintiff and all other Bedford Park drivers additionally had the ability to pick up extra trips in the mornings. However, due to the nature of the industry and daily changes in the volume of mail, the availability of extra trips varies daily. *SMF* at ¶29. In fact, not only do the USPS's requirements vary anywhere from one to forty extra trips each day, but whether those trips are available to any Bedford Park drivers varies as well. Because the extra trips are for work based out of the USPS's Romeoville facility and are thus Romeoville work, Eagle's Romeoville drivers get the first opportunity to take the extra trips when availability. *SMF* at ¶35 Accordingly, it is only when no Romeoville drivers take the extra trips that the same become available to Bedford Park drivers, who then can pick up the extra trips based on both availability and seniority. *Id*. Moreover, because the extra trips, if available, run in the mornings, Bedford Park drivers knew to call Eagle's Romeoville facility each morning after they finished their usual Bedford Park routes to ask whether any extra trips were available. *Id*. However, when the extra work was not available, the Bedford Park drivers then were not needed for the extra morning trips.

7

In fact, even Plaintiff conceded that, during the period in which he contends his hours were reduced while he worked full-time, it was because he no longer had a morning assignment. *SMF* at ¶41. Thus, the summary judgment evidence demonstrates that Eagle did not reduce Plaintiff's hours or routes, but instead, Plaintiff at all times performed his regular route chosen through Eagle's bid process. *SMF* at ¶40. Indeed, the *only* reduction Plaintiff experienced was the reduction in extra trips, which depends solely on the USPS's – not Eagle's – daily decision regarding its need and requirement for any extra trips. *SMF* at ¶2. Moreover, Plaintiff's reduction in hours due to his decision to work full-time for the USPS does not constitute an adverse action because it was unaccompanied by any reduction in pay rate. *Duncan v. Thorek Memorial Hosp.*, 784 F.Supp.2d 910, 920 (N.D. Ill. 2011) (finding that plaintiff could not claim that a new work schedule constitutes an adverse action where the new work schedule was unaccompanied by a reduction in pay rate or significant change in job duties).

### 2. Plaintiff's Retaliation Claim Fails Because Plaintiff Cannot Establish That His EEOC Charge was the But-For Cause of the Alleged Reduction in Hours.

As the basis for his Title VII retaliation claim, Plaintiff alleges that his wages and hours were cut to near zero after he filed EEOC Charge. However, Plaintiff's claim fails because he cannot meet the claim's "but-for" causation standard as necessary to establish a prima facie case. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499 (7th Cir. 2014) ("Retaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation") (internal citations omitted). An adverse employment action that follows closely on the heels of a discrimination complaint may support a causal connection between the two, but "suspicious timing alone is rarely sufficient to create a trial issue. *Mitchell v. City of Chicago*, 2013 U.S. Dist. LEXIS 31235, at *23 (N.D. Ill. Mar. 7, 2013) (internal citation omitted). A causal link is typically found when the adverse employment action is taken within a few days to a week of the plaintiff's engaging in protected conduct. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997). On the other hand, a "substantial time lapse between the two events is counter-evidence of any causal connection." *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 480 (7th Cir.

8

1995). Thus, an adverse action that takes place two months after the employee took part in the statutorily protected activity does not by itself suggest a causal link between them. *See Davidson v. Midelfort Clinic*, 133 F.3d 499, 511 (7th Cir. 1998); *see also Markel v. Bd. of Regents of the Univ. of Wisconsin Sys.*, 276 F.3d 906, 911 (7th Cir. 2002) (holding that statement made two months prior to adverse action was not contemporaneous).

Here, the summary judgment evidence demonstrates that after Plaintiff switched to part-time employment with Eagle on August 2, 2019, Plaintiff worked minimal hours for Eagle. *SMF* ¶7. Then, on October 4, 2019, Plaintiff filed the EEOC Charge, and the EEOC promptly issued notice of the same to Eagle. *SMF* ¶10. Following that date, rather than experience a reduction in hours, Plaintiff's hours significantly *increased* compared to his hours worked prior to when Eagle received notice of the EEOC Charge. *SMF* at ¶10. In fact, it was not until three full months after Eagle received notice of the EEOC Charge that Plaintiff's hours returned to the levels he worked as a part-time driver prior to filing his charge. However, even if contemporaneous in time with Plaintiff's EEOC Charge, this drop in hours instead evidences the conclusion of Eagle's busiest time of year Christmas. *SMF* at ¶44. Thus, rather than experience a reduction in hours following the EEOC Charge, Plaintiff instead merely returned to his regular level of hours as a part-time employee.

Finally, even if this return to normal was a reduction in hours, the summary judgment evidence shows that this did not occur until ***three months*** after Eagle received notice of the EEOC Charge, which is insufficient as a matter of law to demonstrate the necessary causal connection to demonstrate retaliation. *See, e.g., Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (finding that period of five weeks and two months between alleged retaliatory actions and protected activities "militate against" a finding of causation). Although Plaintiff alleges that he did not file the EEOC Charge until November 18, 2019, when he perfected his charge, and February 17, 2020, when he amended the same, he still cannot fabricate a causal connection between these alleged dates and his return to regular season part-time hours. *See* Plaintiff's Complaint [ECF No. 1] at ¶30-31. In *Clark County School Dist. v. Breeden*, the United States Supreme Court held that

9

a right-to-sue letter issued three months before an alleged adverse action was insufficient to establish causation because if the supervisor was presumed to know about the letter, the supervisor. 532 U.S. 268, 273 (2001).

Here, there is no evidence in the summary judgment record to suggest that any of Plaintiff's supervisors knew about either the perfection or amendment of Plaintiff's EEOC Charge, and even if the Court presumes they knew about either, the Court must also presume that Plaintiff's supervisors knew months earlier about the EEOC Charge that the latter filings perfected and amended. Plaintiff fails to establish a prima facie case of retaliation because he cannot demonstrate the necessary but-for causation element.

### 3. Plaintiff Cannot Establish a Prima Facie Title VII Claim Of Discrimination Because He Cannot Show that He was Treated Less-Favorably than Similarly Situated Employees.

To establish a prima facie case, Plaintiff must also how there was a similarly situated employee outside of the protected class that was "directly comparable" to him in all material aspects, meaning the "two employees dealt with the same supervisor, were subject to the same workplace rules, and engaged in similar conduct, but nonetheless received disparate treatment for no apparent legitimate reason." *Thomas v. City of Chicago*, 2010 U.S. Dist. LEXIS 7122 at *29-30 (internal citation omitted). Plaintiff cannot meet the "similarly situated" prong either because he cannot present evidence of a similarly-situated employee outside of the protected class that did not complain about Eagle's trucks and equipment or the amount of hours worked.

Regarding the quality and cleanliness of Eagle's trucks, Plaintiff fails to identify any employees that he alleges are similarly situated to him that either received higher quality and cleaner trucks than he did or that were not required to clean the trucks themselves. In fact, the summary judgment evidence demonstrates that the opposite is true: all Eagle drivers complained about Eagle's trucks and equipment, *SMF* at ¶ 61, it was a common occurrence for drivers to leave trucks dirty for the next driver, *SMF* at ¶ 62, and all Eagle drivers are responsible for cleaning the trucks, whether its cleaning up after themselves after their use, *SMF* at ¶ 58 or cleaning up after a prior driver left the truck dirty for them. *SMF* at ¶62. Thus, the summary judgment evidence refutes

10

any contentions that Plaintiff was treated less-favorably than similarly situated employees because all Eagle employees were subjected to the same quality trucks and equipment and all Eagle employees were subjected to the same responsibilities regarding the cleanliness of the same.

Plaintiff cannot identify any employees that he alleges are similarly situated to him that were treated more favorably than him with respect to hours and routes. Instead, the summary judgment evidence demonstrates that all Eagle drivers are subject to the same bidding process, which is based on seniority and determines the drivers' regular work hours and routes. In *Oliver v. Joint Logistics Managers, Inc.*, the Seventh Circuit held that the plaintiff could not establish a prima facie case of discrimination where the only potential comparators he offered were more senior than him and seniority was the only factor the employer considered when reducing its force. 893 F.3d 408, 412 (7th Cir. 2018). "[T]hose more senior comparators," the court held, "are not similarly situated." *Id*. Here, the only comparators that Plaintiff can conceivably contend received more favorable treatment to him are those more senior to him and Plaintiff conceded that he understood that Eagle's bidding process was determined based on seniority. *SMF* at ¶ 23.

Similarly, Eagle allowed all Bedford Park drivers the opportunity to pick up extra trips in the mornings when available. *SMF* at ¶ 27. However, as demonstrated by the summary judgment evidence, the extra trips are not always available from the USPS, and even when they are available from the USPS, they are not always available to the Bedford Park drivers. *SMF* at ¶33. It is only when there are not enough Romeoville drivers to cover the extra trips that the same become available to Bedford Park drivers. *Id*.

Thus, the only factor Eagle considers when awarding routes and hours is seniority, and because more senior comparators are not similarly situated, Plaintiff cannot establish a prima facie case under Title VII. *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 412 (7th Cir. 2018) ("[T]hose more senior comparators are not similarly situated"). Regardless, even if more senior drivers were similarly situated, the summary judgment evidence demonstrates that during the six-

11

month period prior to when Plaintiff switched to part-time employment with Eagle, Plaintiff averaged more hours per pay period than several of his more senior coworkers. [1] *SMF* ¶26.

### B. Even Assuming Plaintiff Could Set Forth Prima Facie Cases for Any of His Claims, Eagle Nevertheless Had a Legitimate, Non-Discriminatory Reason for the Alleged Adverse Actions.

Even if Plaintiff could state a prima facie case for any of his claims, Eagle has nevertheless met its burden to produce a legitimate, non-discriminatory reason for the alleged adverse actions. Eagle's burden is only to point to "reasonably specific facts that explain how it formed its opinion." *E.E.O.C. v. Target Corp.*, 460 F.3d 946, 957 (7th Cir. 2006). Here, Eagle easily meets it burden for both alleged adverse actions and is therefore entitled to summary judgment.

With respect to Eagle's trucks, the summary judgment record demonstrates that Eagle only assigns trucks to routes based on mileage. *SMF* at ¶50. As a business strategy, Eagle habitually and intentionally uses higher-mileage trucks on higher-mileage routes and lower-mileage trucks on lower-mileage routes. *Id*. By doing so, Eagle keeps the mileage on newer trucks as minimal as possible by using them exclusively on lower-mileage routes before eventually graduating them to use on higher-mileage routes where they will incur miles at a much faster rate. Outside of this system for assigning trucks to routes based on mileage, the only other factors affecting which truck a driver may have any given day are seniority and availability. Because Eagle uses its trucks on rotating shifts, the same trucks are used for both morning runs and afternoon runs. *SMF* at ¶50. For morning runs, drivers with seniority were able to choose lower mileage vehicles by choosing lower mileage routes through the bidding process. *SMF* at ¶52. However, for afternoon routes, drivers were left to take whatever trucks were available. *SMF* at ¶54. Inevitably, because of daily variations in traffic patterns, fueling needs, and other delays, whether a truck is back and available

---

[1] Although Eagle originally hired Plaintiff as a part-time driver on December 5, 2016, Plaintiff's seniority for the bidding process is determined based on his full-time hire date, which was not until May 4, 2018. *SMF* at ¶22. Only one full-time driver (Employee No. 7034) out of Plaintiff's work reporting location had less seniority than Plaintiff but averaged more hours per pay period than Plaintiff. However, given that this one employee's hours clearly exceed the 35 hr/week standard for a full-time driver out of Bedford Park, this employee was undoubtedly picking up extra trips when available. *SMF* at ¶25.

in time for a driver's afternoon route varies from day to day, and thus, drivers lost out on the trucks they wanted on a daily basis. *Id.*, *see also SMF* at ¶57.

Eagle has additionally met is burden of producing several legitimate, non-discriminatory reasons for the any alleged reduction in Plaintiff's routes and hours. As previously explained, Plaintiff alone had the ability to choose both his routes and hours through Eagle's bidding process. *SMF* at ¶19. On top of that, Plaintiff alone had the opportunity to pick up extra work when it was available to Bedford Park drivers. *SMF* at ¶27. Thus, Plaintiff at all times had the ability to dictate how much he worked or did not work, subject to both his availability and seniority. *SMF* at ¶39. In fact, although Plaintiff at all times had the option of seeking extra trips from Eagle's Romeoville facility, the summary judgment evidence demonstrates that Plaintiff instead (1) refused extra trips, and (2) switched his employment to part-time so that he could accept full-time employment with the USPS. *SMF* at ¶38. Given the direct impact these decisions had on Plaintiff's hours, Eagle is at a loss as to how Plaintiff contends his alleged reduction in hours resulted from anything other than his own actions.

Finally, with respect to the alleged reduction in hours in January 2020, Eagle produced evidence demonstrating that this was only because Eagle's busiest season ends at the end of December. *SMF* at ¶43. In fact, the effects of peak season are demonstrated by Plaintiff's own payroll records, which evidence that even after he switched to part-time employment on August 2, 2019 and Eagle received notice of his EEOC Charge on October 4, 2019, Plaintiff experienced a significant *increase* in hours for the months of November and December 2019. *SMF* ¶10. Thus, Eagle has met its burden to produce its legitimate, non-discriminatory reason for any alleged reduction in hours, which resulted from Plaintiff's own actions.

### C. Plaintiff Cannot Demonstrate Pretext

Given Plaintiff's seniority and own actions in switching to part-time employment and refusing hours, Plaintiff cannot prove that Eagle's legitimate, proffered reasons for its truck assignment system and Plaintiff's alleged reduction in hours are pretextual. To survive summary judgment, Plaintiff must raise a genuine issue of material fact as to each and every one of Eagle's stated

13

legitimate, nondiscriminatory reasons for the alleged adverse actions. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 399 (7th Cir. 1998) ("The existence of a genuine issue of triable fact with respect to some of the reasons for discharge proffered by the employer is of no consequence as long as at least one reason is uncontested"). In determining if an employer's legitimate, nondiscriminatory justification for an adverse employment action is pretextual, the threshold question is whether the employer honestly believed the reasons it offered. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 808 (7th Cir. 1999); *see also Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995) (pretext "means a lie, specifically a phony reason for some action").

Here, there is no genuine issue of material fact as to whether Eagle believed its reasons for the alleged adverse actions. The records show that Eagle's truck assignment system is based solely on mileage, seniority and availability, *SMF* at ¶52 and that Eagle offers extra trips to Bedford Park drivers based on seniority and availability. *SMF* at ¶39. Rather than produce any evidence that these legitimate reasons are a lie, Plaintiff instead concedes that trucks are assigned based on availability, *SMF* at ¶54, and that Eagle's bidding process is based on seniority. *SMF* at ¶23. Thus, Plaintiff cannot prove that Eagle's legitimate, proffered reasons for the alleged adverse actions were pretextual, and the undisputed evidence establishes that Plaintiff's race was not the but-for cause of any alleged truck assignments or reduction in work hours.[2]

### D. Summary Judgment for Eagle is Appropriate on the Issue of Punitive Damages Because Eagle Did Not Act with Malice or Reckless Indifference.

If any of Plaintiff's claims remain following summary judgment, the Court should nevertheless find that Plaintiff is not entitled to punitive damages under any of his theories of recovery. In the Seventh Circuit, whether an employee is entitled to punitive damages can be decided on summary judgment. *See e.g., Ortiz v. John O. Butler Co.*, 94 F.3d 1121 (7th Cir. 1996). Punitive awards are only available for violations of Title VII and the IHRA "if the complaining

---

[2] When evaluating claims of discrimination under the IHRA, courts apply the same test employed by federal courts in evaluating Title VII cases. *De v. City of Chicago*, 912 F. Supp. 2d 709, 733 (N.D. Ill. 2012); 42 U.S.C. § 2000e et seq. Courts also evaluate retaliation claims, under the IHRA, pursuant to the same standard as Title VII retaliation claims. *See Zaderaka v. Ill. Human Rights Comm'n*, 131 Ill.2d 172 (1989). As such, Eagle adopts its above arguments relating to Plaintiff's Title VII discrimination and retaliation claims in support of its arguments opposing Plaintiff's IHRA claims.

party demonstrates that the respondent engaged in a discriminatory practice…with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999). Employers cannot be held liable for punitive damages when they engage in good faith efforts to comply with Title VII. *Id*. As the Supreme Court explained, "[w]here an employer has undertaken such good faith efforts at Title VII compliance, it demonstrates that it never acted in reckless disregard of federally protected rights." *Kolstad*, 527 U.S. at 544 (internal quotations omitted).

Here, there is no evidence remotely suggesting that Eagle engaged in conduct that meets the threshold of malice or indifference to federally protected rights. *Compare State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("repeatedly caused physical harm to the financially vulnerable victim" constitutes indifference to or a reckless disregard) *with Mendez Matos v. Municipality of Guaynabo*, 557 F.3d 36, 47, 53 (1st Cir. 2009) (no punitive damages where mayor locked gate to construction site and temporarily detained workers). As a matter of law, this is not malice or reckless indifference to federally protected rights.

Further, the record establishes that Eagle has undoubtedly made good faith efforts to implement Title VII in the workplace by: (1) maintaining policies prohibiting discrimination, harassment, and retaliation, which provide employees channels to report complaints, *SMF* at ¶¶15-16; (2) providing extensive training related to anti-discrimination, anti-harassment, and diversity, *SMF* at ¶¶13-14; and (3) thoroughly investigating complaints of discrimination, harassment, and retaliation when made. *SMF* at ¶17. These facts conclusively demonstrate that Eagle did not act in reckless disregard of Plaintiff's rights. Accordingly, Plaintiff's punitive damages claim fails as a matter of law, and Eagle is entitled to summary judgment on the issue.

## IV. CONCLUSION

For the foregoing reasons, Defendant Eagle Express Lines, Inc. respectfully requests that the Court enter an order granting Eagle's Motion for Summary Judgment and enter judgment as a matter of law with regard to all of Plaintiff's claims in their entirety.

Dated: July 22, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　**EAGLE EXPRESS LINES, INC.**

　　　　　　　　　　　　　　　　　　　By:*/s/ Sara L. Pettinger*　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　One of its Attorneys

Sara Pettinger
Donald J. Vogel
Caroline D. Pratt
**SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.**
30 West Monroe Street, Suite 1600
Chicago, IL 60603
Telephone: (312) 255-7200
spettinger@scopelitis.com
dvogel@scopelitis.com
cpratt@scopelitis.com

16